NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 17, 2024

S24A0010.  BRADLEY v. THE STATE.

BETHEL, Justice.

Benjamin Bradley was convicted of the malice murder of Dequavious Harris, aggravated assault of Clarence Lewis and Quaimaine Harris, aggravated battery of Ricky Davis, and related crimes.[1] On appeal, Bradley argues that the evidence was

---

[1] The crimes occurred on January 15, 2018. In April 2018, a Fulton County grand jury indicted Bradley for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault of Dequavious (Count 4), aggravated assault of Lewis (Count 5), aggravated assault of Quaimaine (Count 6), aggravated assault of Davis (Count 7), aggravated battery of Davis (Count 8), possession of a firearm during the commission of a felony (Count 9), and possession of a firearm by a convicted felon (Count 10). At a November 2019 jury trial, Bradley was found guilty of all counts. The trial court sentenced Bradley to serve life in prison on Count 1, ten years consecutive on each of Counts 5 and 6, fifteen years consecutive on Count 8, and five years consecutive on each of Counts 9 and 10. The remaining counts were vacated or merged. Bradley filed a timely motion for new trial, which he amended through new counsel. Following a hearing, the trial court denied the motion, as amended. Bradley thereafter filed a timely notice of appeal, and the case was docketed to this Court's term commencing in December 2023 and submitted for a decision on the briefs.

insufficient to support his convictions and that trial counsel was constitutionally ineffective. We disagree and affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed as follows. The day before the crimes occurred, Bradley's car was stolen from the parking lot of an Atlanta gas station. Later that day, Bradley's girlfriend overheard Bradley, who was on the phone with his friend Ronnie Bradford, say that "somebody was going to feel his pain because he was angry because the car was stolen," as well as "something about bringing a stick." Bradley later explained to his girlfriend that a "stick" is a gun.

The next night, January 15, 2018, Bradley and Bradford were driven to the gas station by an acquaintance in a white Dodge Journey. Bradley initially entered the store to ask the cashier if anyone had mentioned his stolen car. Then, surveillance footage showed Bradley exit the store, approach the Dodge Journey's front passenger window, and speak to Bradford. Bradford handed Bradley a small black object, and Bradley raised his shirt, tucked the object

into his waistband, and lowered his shirt to cover the object. Bradley reentered the store and approached Davis, Quaimaine, and a man identified only as "Black." Davis testified that Bradley was "clutching" his pants, as if he were "holding a pistol or something,"[2] while Quaimaine indicated that Bradley had his hands in his pockets. Bradley asked the men if they knew anything about a stolen car. Though the group denied any knowledge, their interaction with Bradley quickly became acrimonious, and the cashier told them to leave.

Surveillance footage showed that, outside the store, Bradley continued arguing with the group, until Black gave physical indications that he was prepared to engage in a physical conflict. Bradley then retreated to the Dodge Journey, which drove out of the gas station's parking lot, while the group of men, which had been joined by Dequavious and Lewis, remained outside in front of the gas station. Approximately three minutes later, gunshots were fired

---

[2] Davis testified that Bradley was not "clutching" his pants when he first entered the store and spoke to the cashier.

outside the gas station from a location not within the view of the surveillance cameras. Davis was struck in the arm, and Dequavious was struck in the head, resulting in his death.

Davis and Lewis testified that, just before the shooting, they saw Bradley, who was standing by the side of the gas station, pointing a gun at the group.[3] After the shooting stopped, Lewis retrieved his own firearm from his vehicle, ran to where Bradley had been standing, and saw Bradley entering a white Dodge Journey. Bradley again pointed his gun at Lewis, and Lewis fired his weapon. Quaimaine also observed a white Dodge Journey driving near the gas station just after the shooting. Davis and Lewis identified Bradley as the shooter in a six-photograph array. Quaimaine, who did not see the shooter, identified Bradley, also in a six-photograph array, as the person who confronted the group at the gas station. At trial, the parties stipulated that Bradley is a convicted felon.

On appeal, Bradley asserts that the evidence recounted above

---

[3] Both men testified that the shooter was wearing a blue sweater, and surveillance footage showed Bradley dressed in a blue sweater.

was insufficient as a matter of due process to support his convictions. In support of this claim, Bradley points to inconsistencies in the evidence that he says undermined the reliability of the eyewitness testimony and notes the absence of physical evidence tying him to the shooting. But "it is axiomatic that resolving evidentiary conflicts and assessing witness credibility are within the exclusive province of the jury," *Graves v. State*, 298 Ga. 551, 553 (1) (783 SE2d 891) (2016), and, contrary to Bradley's contention, "the State was not required to produce any physical evidence," *Roberts v. State*, 305 Ga. 257, 259 (2) (824 SE2d 326) (2019) (citation and punctuation omitted). See also *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017) ("Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence."). Viewing all the evidence in the light most favorable to the jury's verdicts, we readily conclude as a matter of due process that it was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Bradley was guilty of the crimes of

which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Bradley also asserts that the evidence against him was insufficient under OCGA § 24-14-6 because, he says, the State's case was based "solely on circumstantial evidence" that failed to exclude "every other reasonable hypothesis save that of the guilt of the accused." See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). But, contrary to Bradley's argument, his convictions were not based solely on circumstantial evidence. The eyewitness testimony of Davis and Lewis identifying Bradley as the shooter was direct evidence. See *Gittens v. State*, 307 Ga. 841, 842 (1) n.2 (838 SE2d 888) (2020) ("Eyewitness testimony based on the witness's firsthand observations of the crime is direct, not circumstantial, evidence."). "And if there is any direct evidence presented by the State, the circumstantial evidence statute does not apply in a sufficiency

analysis." *Maynor v. State*, 317 Ga. 492, 49 (2) (b) (893 SE2d 724) (2023). Accordingly, Bradley's statutory sufficiency claim fails.

2. In a series of vague, conclusory arguments on appeal, Bradley asserts that trial counsel was constitutionally ineffective for failing to present the testimony of certain unidentified defense witnesses at trial and for failing to pursue "other theories of defense or innocence." To prevail on this claim, Bradley bears the burden of showing both that trial counsel's performance was professionally deficient and that he was prejudiced as a result of that deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 695 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). The failure to demonstrate either deficient performance or resulting prejudice is fatal to a claim of ineffective assistance of counsel and obviates the need even to consider the other. See *Neuman v. State*, 311 Ga. 83, 97 (5) (856 SE2d 289) (2021).

Here, Bradley has not even attempted to show that he was prejudiced as a result of trial counsel's purportedly deficient performance. Bradley asserts without elaboration that "prejudice

7

should be presumed." But Bradley ignores that "this Court has declined to presume prejudice in the context of an ineffective assistance of counsel claim based on attorney performance[.]" *Keller v. State*, 308 Ga. 492, 496 (2) (a) (842 SE2d 22) (2020); see also *Reid v. State*, 286 Ga. 484, 488 (3) (c) (690 SE2d 177) (2010). Instead, as we have oft recognized, "*Strickland* places a heavy burden on the defendant to 'affirmatively prove' prejudice," that is, to "demonstrate that there is a reasonable probability the trial would have had a different outcome." *Neuman*, 311 Ga. at 97 (5). Bradley, however, has not identified the additional witnesses he contends counsel should have called to testify at trial or demonstrated what their testimony would have shown.[4] See *Butler v. State*, 313 Ga. 675, 684 (4) (b) (872 SE2d 722) (2022). And beyond a passing complaint that trial counsel "did not advance other theories of defense or

---

[4] Bradley asserts for the first time in his reply brief that trial counsel could have called Bradley's girlfriend, Ronnie Bradford, "Black," or an unspecified "Atlanta native" to contradict the State's theory of the case. "[B]ut an appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *Williams v. State*, 307 Ga. 689, 689 n.2 (838 SE2d 314) (2020).

innocence — such as that [ ] Bradley was defending himself and his property," Bradley does not articulate how he was prejudiced by counsel's failure to pursue these defenses, which find no support in the evidence presented at trial and would have been inconsistent with his defense of misidentification. See *Gaston v. State*, 307 Ga. 634, 637-639 (2) (a) (837 SE2d 808) (2020). Bradley's complete failure to make these required affirmative showings dooms his claim of ineffective assistance.

*Judgment affirmed. All the Justices concur.*