319 Ga. 868
FINAL COPY


S24A0616. NAJARRO v. THE STATE.


BETHEL, Justice.

Following a jury trial, Sylvia Marie Najarro was convicted of felony murder and related crimes in connection with the shooting death of Jamun El Winslow during a drug deal.[1] The trial court denied Najarro's motion for new trial, and Najarro appeals, contending that her trial counsel rendered constitutionally ineffective assistance. For the reasons that follow, we affirm.

---

[1] The crimes occurred on February 5, 2020. In October 2022, a Gwinnett County grand jury indicted Najarro and co-indictees Jaime Manuel Jimenez and Jayce Thayleen Villafana-Diaz for felony murder predicated on aggravated assault (Count 1), felony murder predicated on criminal attempt to commit robbery (Count 2), felony murder predicated on criminal attempt to purchase marijuana (Count 3), aggravated assault (Count 4), criminal attempt to commit robbery (Count 5), and criminal attempt to purchase marijuana (Count 6). Najarro was tried alone before a jury from November 7 to 15, 2022. The jury returned verdicts of not guilty on Counts 2 and 5 but guilty on all remaining counts. The trial court sentenced Najarro to serve life in prison on Count 3 and a consecutive term of five years in prison on Count 4. The remaining counts merged or were vacated by operation of law. Najarro filed a timely motion for new trial, which she amended twice through new counsel. Following a hearing, the trial court denied Najarro's motion, as amended, on December 26, 2023. Najarro filed a timely notice of appeal, and the case was docketed to this Court's April 2024 term and submitted for a decision on the briefs.

1. The evidence presented at trial showed as follows. On the night of the crimes, El Winslow drove to a Gwinnett County gas station, where he met Najarro and her co-indictees Jaime Manuel Jimenez and Jayce Thayleen Villafana-Diaz to sell them marijuana. Surveillance video that was introduced into evidence at trial showed Najarro and Villafana-Diaz enter El Winslow's vehicle after he parked outside the gas station. A short time later, Najarro exited the vehicle and entered the gas station where a Spanish-speaking eyewitness overheard Najarro tell Jimenez in Spanish, "Hurry up, he's about to leave." While Najarro waited inside, Jimenez exited the gas station, approached and attempted to enter El Winslow's vehicle, and then brandished a gun. El Winslow attempted to drive away, and Jimenez fired his gun at El Winslow, striking him in the upper back. Responding officers found El Winslow deceased in his vehicle, along with a bag of marijuana.

Investigators identified Najarro and her co-indictees after reviewing the surveillance footage from the gas station. Najarro was identified from distinctive tattoos on her face and neck, which are

visible on the surveillance video. Fingerprints lifted from the passenger-side door of El Winslow's vehicle were matched to Najarro. And a text message sent from Najarro's phone after the crimes stated, "We need to go . . . we shot her homeboy."

2. Najarro's sole contention on appeal is that her trial counsel rendered constitutionally ineffective assistance in four respects. To prevail on this claim, Najarro bears the burden of demonstrating both that trial counsel's performance was deficient and that she was prejudiced as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To show deficient performance, Najarro "must demonstrate that [her] attorney performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Butler v. State*, 313 Ga. 675, 683 (4) (872 SE2d 722) (2022) (citation and punctuation omitted). To show prejudice, Najarro must demonstrate "a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." Id. "The failure to demonstrate either deficient

3

performance or resulting prejudice is fatal to a claim of ineffective assistance of counsel and obviates the need even to consider the other." *Bradley v. State*, 318 Ga. 142, 144 (2) (897 SE2d 428) (2024). We address Najarro's claims in turn.

(a) Najarro's first claim of ineffective assistance concerns the admission of body camera footage showing a police officer's interview with the Spanish-speaking eyewitness who overheard Najarro speak to Jimenez just before the shooting, as well as the admission of a transcript of the interpretation of that interview from Spanish to English, which was prepared by a court-certified interpreter. During the interview, which took place shortly after the crimes, the eyewitness communicated with the assistance of his son, who acted as an interpreter. The eyewitness and the police officer to whom the eyewitness made his statement both testified at trial, and their testimony was, in some respects, inconsistent with the eyewitness's prior statement. Thereafter, the State sought to impeach both the eyewitness's and the police officer's trial testimony by introducing the body camera footage and transcript of the

4

interpreted interview. Trial counsel objected to the admission of the body camera footage on the basis that the eyewitness's son, who did not testify at trial, inaccurately interpreted portions of the conversation, but the trial court admitted the footage over counsel's objection. The transcript of the interview was admitted without objection.

Now, on appeal, Najarro argues that trial counsel was deficient in failing to raise a hearsay objection to the admission of the body camera footage. She further asserts that the eyewitness's statement amounted to a prior consistent statement, that the State improperly bolstered the eyewitness's trial testimony with that prior consistent statement by introducing the body camera footage into evidence, and that trial counsel was deficient in failing to object on that basis. Najarro also contends that trial counsel was deficient in failing to raise a hearsay objection to the admission of the transcript. Our review of the record, however, reflects that counsel's decision not to raise further objections was part of a reasonable trial strategy. See *Williams v. State*, 302 Ga. 474, 486 (IV) (d) (807 SE2d 350) (2017)

5

("[R]easonable decisions as to whether to raise a specific objection are ordinarily matters of trial strategy and provide no ground for reversal." (citation and punctuation omitted)). And "[a] defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." *Gittens v. State*, 307 Ga. 841, 847 (2) (e) (838 SE2d 888) (2020) (citation and punctuation omitted). Najarro has not made that showing.

At the motion for new trial hearing, trial counsel emphasized that he does not make objections simply because such objections are available, explaining that he does not "just say, oh, that's hearsay, objection" because his practice is not to object "to those things that don't go directly to inculpatory or exculpatory evidence as to [his] client's guilt[.]" Trial counsel elaborated that he may decide to forgo an objection because the evidence at issue "may create an opportunity . . . in the trial later on to make an argument about something that is not necessarily obvious," especially if the evidence does not speak directly to his client's guilt or innocence. And the

6

record reflects that counsel employed this strategic approach here. When the trial court overruled trial counsel's objection to the admissibility of the body camera footage, counsel shifted his attention to mitigating the impact of the son's inaccurate interpretation and, with input from the trial court, reached an agreement with the prosecutor as to how the body camera footage and the transcript of the interview's interpretation would be admitted into evidence and presented to the jury. Later, when the transcript was admitted during the testimony of the interpreter who prepared the transcript, trial counsel extensively cross-examined the interpreter regarding the inaccuracy of the son's interpretation, with the interpreter agreeing that the son's interpretation was "terrible." And during closing argument, trial counsel argued at length that the State's shifting accounts of the crimes — as evidenced by the testimony of the eyewitness and the police officer, the body camera footage, and the transcript of the interview — undermined the credibility of the eyewitness and the soundness of the State's investigation and theory of the case. In light of these

7

circumstances, we cannot say that, by failing to raise hearsay or bolstering objections to the body camera footage and transcript of the interview's interpretation, trial counsel pursued an objectively unreasonable strategy, and Najarro makes no effort to demonstrate otherwise. See *Harrison v. State*, 309 Ga. 747, 751-752 (2) (848 SE2d 84) (2020) (no deficient performance where trial counsel's failure to raise hearsay and bolstering objections arose from trial counsel's strategic decision to forgo objection in favor of using testimony to support theory of defense); *Sawyer v. State*, 308 Ga. 375, 386 (2) (c) (839 SE2d 582) (2020) ("In light of trial counsel's testimony, trial counsel's decision to use the detective's testimony in support of a defense strategy — and not to object to it on hearsay grounds — was not so patently unreasonable that no competent attorney would have chosen to forgo an objection to this testimony." (citation and punctuation omitted)); *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) ("The decision not to object to certain hearsay or to leading questions is often the result of reasonable trial strategy. Because Appellant has not made a contrary showing, he has failed

to show deficient performance." (citation and punctuation omitted)). Najarro therefore has failed to carry her burden of proving that she was denied the effective assistance of counsel.

(b) Najarro also asserts that trial counsel was ineffective by failing to raise two additional hearsay objections. Specifically, she complains that two officers who were not present during her arrest were permitted to testify without objection that she was arrested in a hotel room where weapons, drugs, and her cell phone were also found.[2] She also argues that a hearsay objection was warranted when the State moved to admit body camera footage showing an interview with a witness who was on the phone with El Winslow during the shooting and stated that he heard El Winslow's car crash and El Winslow yell at him to call 911.

At the motion for new trial hearing, trial counsel was asked about his decision not to object to the admission of this particular evidence. And again trial counsel's testimony demonstrates that

---

[2] One officer obtained the arrest warrant for Najarro, though he was not present for her arrest. The other officer obtained and executed a search warrant for the hotel room in which Najarro was arrested.

9

counsel made the strategic decision not to object. To that end, counsel explained that he did not view this particular evidence, which in no way connected Najarro to the crimes, as prejudicial to Najarro's defense because the evidence did not go to the ultimate issue of Najarro's guilt. Though trial counsel agreed that the evidence at issue constituted hearsay, he emphasized that, if evidence is not "in some way[,] shape[,] or form going to circle back and burn [his] client as to the ultimate issue . . . , [he is] not just objecting just to be objecting." Trial counsel's decision not to object to evidence that did not speak directly to Najarro's guilt "was a legitimate trial strategy that falls within the range of reasonable professional conduct." *Durham v. State*, 292 Ga. 239, 242 (4) (a) (734 SE2d 377) (2012); see also *Gittens*, 307 Ga. at 847 (2) (e) (failure to object to evidence not prejudicial to defendant does not support finding of deficient performance); *Anthony v. State*, 303 Ga. 399, 410 (9) (811 SE2d 399) (2018) (same). Accordingly, this claim fails.

(c) Finally, Najarro argues that trial counsel was ineffective by failing to move for sanctions under OCGA § 17-16-6 after the State

sought to admit a transcript of the English interpretation of the eyewitness interview discussed above on the basis that the transcript was not produced before trial. In particular, Najarro argues that trial counsel should have moved to exclude the transcript, one of the remedies specified by OCGA § 17-16-6 (to remedy a discovery violation, "the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances"). To demonstrate that trial counsel performed deficiently by failing to move to exclude the transcript pursuant to OCGA § 17-16-6, Najarro must establish not only that a discovery violation actually occurred but also that the trial court would have granted a motion to exclude the evidence under OCGA § 17-16-6 had counsel actually made the motion. See *Mims v. State*, 304 Ga. 851, 858-859 (2) (c) (823 SE2d 325) (2019) ("[T]rial counsel cannot be deficient for failing to file a meritless motion[.]").

11

Here, assuming that a discovery violation occurred such that the trial court would have been authorized under OCGA § 17-16-6 to fashion a remedy for that violation, it is not at all clear that exclusion of the transcript necessarily would have been warranted. As we have explained, "[e]xclusion of evidence pursuant to OCGA § 17-16-6 is a particularly harsh sanction that should be imposed only where there is a showing of bad faith by the party that has failed to comply with its discovery obligation and prejudice to the other party." *Parker v. State*, 309 Ga. 736, 742-743 (4) (848 SE2d 117) (2020) (citation and punctuation omitted). Najarro's conclusory argument on this point, unsupported by citation of authority, falls far short of demonstrating either the requisite bad faith or resulting prejudice to support the transcript's exclusion under OCGA § 17-16-6. Moreover, the record reflects that trial counsel requested and was given time to review the transcript of the interview's interpretation before it was introduced at trial. Though trial counsel did not ground his request for time to review the transcript in the provisions of OCGA § 17-16-6, a continuance is one of the remedies contemplated

12

by that statute. And trial counsel effectively obtained the benefit of a continuance here. In short, Najarro has wholly failed to establish that trial counsel performed deficiently by failing to seek to exclude the transcript under OCGA § 17-16-6. See *Mims*, 304 Ga. at 858-859 (2) (c). As such, this claim, like the others, fails.[3]

*Judgment affirmed. All the Justices concur.*

Decided October 1, 2024.

Murder. Gwinnett Superior Court. Before Judge Adkins.

*David L. Whitman*, for appellant.

*Patsy Austin-Gatson, District Attorney, Christopher M. DeNeve, Wanda L. Vance, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Michael A. Oldham, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.

---

[3] Najarro argues in passing that the cumulative effect of trial counsel's deficiencies should be considered. We have neither assumed nor identified any instance of deficient performance, however, so there are no errors to aggregate, and Najarro's claim of cumulative error also fails. See *Blocker v. State*, 316 Ga. 568, 583 (5) (889 SE2d 824) (2023).